**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | § | |
|     Plaintiff, | § | |
| | § | |
| v. | § | CIVIL CASE NO. H-05-3539 |
| | § | |
| AMERUSSIA SHIPPING CO., INC., | § | |
| *et al.*, | § | |
|     Defendants. | § | |

## MEMORANDUM AND ORDER

This case is before the Court on the United States of America's Motion to

Dismiss and/or for Summary Judgment as to Defendants' Counterclaims ("Motion")

[Doc. # 15].[1]  Defendant Amerussia Shipping Co., Inc. ("Amerussia") filed a

Response [Doc. # 16] supported by the Affidavit of William Cox [Doc. # 17], and

Plaintiff filed a Reply [Doc. # 18].  Based on the Court's review of the full record in

this case and the application of governing legal authorities, the Court **grants** the

Motion to Dismiss and/or for Summary Judgment.  Amerussia's counterclaims are

dismissed.

---

[1]      Amerussia filed a "Verified Answer to Verified Complaint and Counterclaim" [Doc. # 5],
containing a single "Counterclaim" including a paragraph regarding the four shipments that
took place and a paragraph regarding the cancelled shipment.  For purposes of clarity, the
Court will refer to each of the five shipments, including the cancelled shipment, as a separate
counterclaim.

## I.      FACTUAL AND PROCEDURAL BACKGROUND

In February 1999, the United States entered into an agreement to donate frozen pork to the Russian Federation.  *See* "Agreement Between the Government of the United States of America and the Government of the Russian Federation for the Supply of Agricultural Commodities, Under the Food for Progress Act" ("Donor Agreement"), Exh. 1 to Motion.  Pursuant to the Donor Agreement, the United States agreed for the Commodity Credit Corporation ("CCC") to pay for the transportation of the frozen pork and the Russian Federation agreed to contract with a carrier to transport the frozen pork from the United States. The Russian Federation invited bids pursuant to a Freight Tender dated July 19, 1999.  *See* Freight Tender, Exh. 2 to Motion.  Amerussia submitted its offer, Exh. 3 to Motion, and its offer was accepted. *See* Acceptance Letter, Exh. 4 to Motion.  Thereafter, the Russian Federation entered into Booking Notes for Amerussia to transport the frozen pork on certain vessels. Each of the Booking Notes incorporated by reference the provisions of the Donor Agreement and the Freight Tender.  Although the CCC would pay the freight charges associated with the transportation of the frozen pork, the United States was not a party to any of the Booking Notes between the Russian Federation and Amerussia.

Amerussia transported shipments of pork from Houston, Texas, aboard four different vessels:  the Argentinean Reefer, the Winter Water, the Pacific Star, and the

Belgium Reefer.  The United States alleges that there were significant cargo losses

for the shipments on the Argentinean Reefer, the Winter Water, and the Belgium

Reefer.[2]  The Russian Federation cancelled the booking with Amerussia for the final

shipment and contracted with a different company for the transportation of the

donated pork.

On October 14, 2005, the United States filed this lawsuit against Amerussia to

recover $226,502.54 in cargo damage, plus interests and costs.  On January 20, 2006,

Defendants filed its Verified Answer to Verified Complaint and Counterclaim

("Counterclaims") [Doc. # 5].  As to the four shipments with Amerussia, the shipping

company claimed that less cargo was delivered than had been agreed upon and

alleged that it incurred "delay and 'dead freight' damages in excess of $210,000.00."

*See* Counterclaims, ¶ 3.  Amerussia also sought "delay and lost revenue damages in

excess of $550,00[0].00" based on the Russian Federation's cancellation of the fifth

shipment with Amerussia.  *See id.*, ¶ 4.

The United States has moved to dismiss or for summary judgment as to

Amerussia's counterclaims.  The United States argues that the counterclaim that

relates to the Pacific star shipment and the counterclaim that relates to the cancelled

shipment are barred by the United States' sovereign immunity.  The United States

---

[2]     The United States did not allege cargo losses for the shipment on the Pacific Star.

argues that the counterclaims relating to the shipments that are the subject of the Complaint in this case are time-barred.  The United States argues further that the alleged delay and dead freight damages on which Amerussia bases any claim for recoupment are specifically precluded by the Booking Notes, including the Freight Tender incorporated by reference, covering those shipments.  The motion has been fully briefed and is now ripe for decision.

## II.   APPLICABLE LEGAL STANDARDS

### A.   Standard for Motion to Dismiss for Lack of Jurisdiction

A party asserting that the Court has subject matter jurisdiction has the burden to establish it.  *See Ramming v. United States*, 281 F.3d 158, 161 (5th Cir. 2001).  A defendant[3] may challenge the plaintiff's assertion of subject matter jurisdiction through a motion under Rule 12(b)(1) of the Federal Rules of Civil Procedure.  *See* FED. R. CIV. P. 12(b)(1).  In examining a motion pursuant to Federal Rule of Civil Procedure 12(b)(1), the district court is not bound by the allegations in the pleading, but is empowered to consider matters of fact which may be in dispute.  *Ramming*, 281 F.3d at 161; *Williamson v. Tucker,* 645 F.2d 404, 413 (5th Cir. 1981).  "A case is properly dismissed for lack of subject matter jurisdiction when the court lacks the

---

[3]    The reference to "defendant" in the legal standards applies to the United States as the counter-defendant on Amerussia's challenged counterclaims.

statutory or constitutional power to adjudicate the case." *Home Builders Ass'n of Miss., Inc. v. City of Madison, Miss.,* 143 F.3d 1006, 1010 (5th Cir. 1998).

## B.     Standard for Motion for Summary Judgment

"For a defendant to obtain summary judgment on an affirmative defense, it must establish beyond dispute all of the defense's essential elements." *Bank of Louisiana v. Aetna U.S. Heathcare Inc.*, 468 F.3d 237, 241 (5th Cir. 2006) (citing *Martin v. Alamo Community Coll. Dist.*, 353 F.3d 409, 412 (5th Cir. 2003)).  There exists a dispute precluding summary judgment if the "evidence is such that a reasonable jury could return a verdict for the nonmoving party." *DIRECT TV Inc. v. Robson*, 420 F.3d 532, 536 (5th Cir. 2006) (internal citations omitted).  The facts and the inferences to be drawn from them must be reviewed in the light most favorable to the nonmoving party. *Reaves Brokerage Co. v. Sunbelt Fruit & Vegetable Co.*, 336 F.3d 410, 412 (5th Cir. 2003).  However, factual controversies are resolved in favor of the non-movant "only when there is an actual controversy—that is, when both parties have submitted evidence of contradictory facts." *Olabisiomotosho v. City of Houston,* 185 F.3d 521, 525 (5th Cir. 1999).  The non-movant's burden is not met by mere reliance on the allegations or denials in the non-movant's pleadings. *See Diamond Offshore Co. v. A&B Builders, Inc.*, 302 F.3d 531, 545 n.13 (5th Cir. 2002). Likewise, "unsubstantiated or conclusory assertions that a fact issue exists" do not

meet this burden. *Morris v. Covan World Wide Moving, Inc.*, 144 F.3d 377, 380 (5th Cir. 1998).

## III.   ANALYSIS

### A.   Motion to Dismiss Counterclaims

The United States is immune from suit unless it consents to be sued. *See First Nat'l Bank v. Genina Marine Serv. Inc.*, 136 F.3d 391, 394 (5th Cir. 1998). The consent can be "either by specific statutory consent or by instituting a suit as to which a defendant may plead matters in recoupment." *Id.* (quoting *EEOC v. First Nat'l Bank*, 614 F.2d 1004, 1007 (5th Cir. 1980)). The sovereign immunity is waived in the second manner only "as to claims of the defendant which assert matters in recoupment . . .." *Id.* at 395 (quoting *Frederick v. United States*, 386 F.2d 481, 488 (5th Cir. 1967)).

"To state a claim in recoupment, a counterclaim must assert a claim arising out of the same transaction or occurrence which is the subject matter of the government's suit and seek relief only to the extent of diminishing or defeating the government's recovery." *EEOC*, 614 F.2d at 1008. A defendant's counterclaim is not one in recoupment "if the damages claimed by the defendant arise from the breach of an independent contract." *Id.*

In this case, each shipment was subject to a separate Booking Note.  Under shipping law, a separate bill of lading, the Booking Note in this case, is a separate contract and separate transaction.  *See Ferrostaal, Inc. v. M/V Yvonne*, 10 F. Supp. 2d 610, 613 (E.D. La. 1998) (citing 46 U.S.C. § 1301(b)).  The United States in its Complaint asserts claims for losses resulting from the shipment aboard the Argentinean Reefer, the Winter Water, and the Belgium Reefer and has waived its immunity for counterclaims for recoupment based on these three shipments. Amerussia's counterclaims based on the shipment aboard the Pacific Star and on the cancelled shipment each arise from the breach of a separate contract not asserted in the United States' Complaint and, therefore, are not claims in recoupment.  As a result, the United States has not waived its sovereign immunity as to these two claims, and dismissal for lack of subject matter jurisdiction is appropriate.

### B.   Motion for Summary Judgment on Statute of Limitations Grounds

The United States argues that Amerussia's counterclaims as to the Argentinean Reefer, the Winter Water, and the Belgium Reefer are time-barred.  Amerussia concedes that it failed to file the counterclaims within the applicable six-year statute of limitations.[4]  Amerussia argues, however, that equitable tolling applies to forgive

---

[4]   The parties do not dispute that the applicable statute of limitations is the six-year period under the Commodity Credit Corporation Charter Act, 15 U.S.C. § 714b.

the untimely filing.  Equitable tolling applies sparingly and only when the party seeking to benefit from the doctrine has either filed a timely but defective pleading or "has been induced or tricked by his adversary's *misconduct* into allowing the filing deadline to pass."  *See Irwin v. Dept. of Veterans Affairs*, 498 U.S. 89, 96 (1990) (emphasis added).  The "principles of equitable tolling . . . do not extend to what is at best a garden variety claim of excusable neglect."  *Id.*

Amerussia has argued and presented evidence that it "had extensive dealings regarding the potential claims related to the voyages . . . during which efforts were made to resolve outstanding issues."  *See* Affidavit of William Cox [Doc. # 17], ¶ 3. According to Cox, he believed that the parties would resolve their dispute.  *See id.*, ¶ 5.  Amerussia has not, however, identified any "misconduct" on the part of the United States.  Instead, Amerussia has presented evidence that the United States engaged in settlement negotiations with Amerussia but, when no agreement was forthcoming and the statute of limitations deadline was approaching, filed this lawsuit. This does not satisfy the requirements for the application of equitable tolling and the counterclaims are untimely.

### C.    Motion for Summary Judgment Based on Contract Provisions

The United States argues further that Amerussia is not entitled to recoupment in this case because Amerussia's claims of "delay and dead freight" damages are precluded by the parties' contract.

Damages for delay in the shipping industry are referred to as "demurrage." *See, e.g.,* 2 Thomas J. Schoenbaum, ADMIRALTY AND MARITIME LAW § 11-15 (4th ed. 2004); *TAG/ICIB Servs., Inc. v. Pan Am. Grain Co.*, 215 F.3d 172, 174 n.1 (1st Cir. 2000).  In this case, the United States has presented evidence that the Freight Tender, incorporated into the Booking Note for each shipment, provides clearly and unequivocally that there is "no demurrage." *See* Freight Tender, p.2.  Similarly, each Booking Note provides that there is "no demurrage" except in circumstances not relevant to Amerussia's claim.  *See* Booking Note Terms, Exh. 9 to Motion, ¶ 4. Amerussia has presented no evidence to the contrary.  As a result, the United States is entitled to summary judgment on Amerussia's recoupment claim seeking damages from any alleged delay.

Amerussia also asserts a recoupment claim for "dead weight" damages resulting from the alleged failure to "deliver the agreed upon quantity of cargo to the loading port in Houston . . .." *See* Counterclaims, ¶ 3.  The United States has presented evidence that the Freight Tender, incorporated into each Booking Note, provided clearly that the quantities set forth therein are "approximate" and that they

may be "adjusted up or down at the sole discretion of the [United States Department

of Agriculture]." *See* Freight Tender, Exh. 2 to Motion, p. 1.   Amerussia has

presented no evidence to the contrary, but argues that the quoted language applied

only "to the total amount of product shipped, and not to the quantity for each

individual voyage." *See* Defendants' Opposition [Doc. # 16], p. 11 (emphasis in

original).   Amerussia does not explain how the total quantity could be adjusted

without any of the individual voyage quantities being adjusted.  The United States has

thus presented uncontroverted evidence that the contracts between the Russian

Federation and Amerussia specifically permit the delivery of a lesser amount of cargo

than was proposed in the Freight Tender and the Booking Notes.  Consequently, any

delivery of a lesser amount would not, as a matter of law, constitute a "contractual

breach" as alleged by Amerussia.  The United States is entitled to summary judgment

on Amerussia's counterclaims.[5]

## IV.   CONCLUSION AND ORDER

The Court lacks jurisdiction to entertain Amerussia's counterclaims to the

extent they relate to shipments other than those for which the United States has

---

[5]   The United States argues further that the discovery period has closed and Amerussia failed to produce calculations and evidence supporting its alleged damages.  Although any evidence not produced during discovery would not be admissible at trial in this case, Amerussia's counterclaims are both time-barred and precluded by the contracts governing the shipments. As a result, the Court need not address the United States' complaints regarding Amerussia's failure to comply with its discovery obligations.

waived sovereign immunity by seeking in its Complaint damages relating to those shipments.  The remaining counterclaims, which relate to shipments covered in the United States' Complaint, are time-barred.  The United States is also entitled to summary judgment on any claim for recoupment because the "delay and dead freight" damages on which Amerussia bases its recoupment claim are not recoverable under the terms of the Freight Tender, as incorporated into the Booking Notes.  Accordingly, it is hereby

**ORDERED** that the United States' Motion to Dismiss and/or for Summary Judgment [Doc. # 15] is **GRANTED**.  The parties' Joint Pretrial Order remains due **August 12, 2007**, and the case remains scheduled for docket call at **4:00 p.m. on August 17, 2007**.

SIGNED at Houston, Texas, this 2nd day of **July, 2007**.

Nancy F. Atlas
United States District Judge